Evan S. Nadel (CA Bar No. 213230)
KILPATRICK TOWNSEND & STOCKTON LLP
*ENadel@kilpatricktownsend.com*
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone: (415) 576-0200; Facsimile: (415) 576-0300

Rita Weeks (CA Bar No. 232396)
*RWeeks@kilpatricktownsend.com*
Marc A. Lieberstein (*pro hac vice* application forthcoming)
*MLieberstein@kilpatricktownsend.com*
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700; Facsimile: (212) 504-9566

*Attorneys for Plaintiff, Chippendales USA, LLC*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIPPENDALES USA, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>JESUS "JESSE" BANERJEE, dba EASEBE ENTERPRISES INC.,<br><br>       Defendant. | **CASE NO. 2:23-cv-03672**<br><br>**COMPLAINT FOR:**<br><br>**Declaratory Judgment as to Plaintiff's Ownership Rights in the CHIPPENDALES Trademarks;**<br><br>**Federal Trademark Infringement (15 U.S.C. § 1114(1));**<br><br>**Trademark Counterfeiting (15 U.S.C. § 1114);**<br><br>**Federal Unfair Competition (15 U.S.C. § 1125(a));**<br><br>**Federal Trademark Dilution (15 U.S.C. § 1125(c));**<br><br>**California Trademark Dilution (Cal. Bus. & Prof. Code § 14330); and**<br><br>**California Unfair Business Practices (Cal. Bus. & Prof. Code § 17200)**<br><br><u>**JURY TRIAL DEMANDED**</u> |



COMPLAINT – Case No. 2:23-cv-03672

Plaintiff Chippendales USA, LLC ("Plaintiff") brings this action to stop Defendant from continuing to infringe and misuse Plaintiff's famous CHIPPENDALES trademarks, and to put an end to Defendant's illegal interference with Plaintiff's validly held trademark registrations at the U.S. Patent and Trademark Office ("USPTO").  Despite Plaintiff's bona fide acquisition of the CHIPPENDALES business and CHIPPENDALES trademarks over 20 years ago, Defendant has repeatedly filed unauthorized documents with the USPTO trying to change ownership of Plaintiff's registrations.  He also repeatedly makes public claims in court filings, filings with the USPTO, and elsewhere that the 1994 sale of the CHIPPENDALES business and trademarks was fraudulent, and therefore the subsequent sale of the business and CHIPPENDALES trademarks to Plaintiff in 2000 was also fraudulent, and thus Plaintiff is not the legitimate owner of the marks. Defendant claims to be an heir of the CHIPPENDALES founder and alleges that he was "robbed" of his "rightful inheritance" - the CHIPPENDALES brand, "trademark," and royalties – yet the CHIPPENDALES founder transferred his interest in the CHIPPENDALES company and its trademarks to his wife before his death, so they were not part of his estate when he passed away.  Therefore, both the 1994 sale and the subsequent 2000 sale were valid.  Defendant's conduct casts a serious cloud on Plaintiff's interests in the world-famous CHIPPENDALES brand that it has spent the last 23 years building.  Plaintiff seeks a declaration under the Declaratory Judgment Act to settle this actual controversy regarding ownership of the CHIPPENDALES Trademarks, as well as an injunction to stop Defendant's willful infringement of the marks.  Plaintiff alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a Delaware limited liability company that is comprised of four members, each of whom is a natural person domiciled in New York state. Accordingly, Plaintiff is a resident of New York.



2.      Plaintiff owns and operates the world-famous CHIPPENDALES entertainment brand that produces Broadway-style, burlesque shows worldwide.

3.      Jesus "Jesse" Banerjee ("Defendant" or "Jesse") is an individual who, on information and belief, resides in Los Angeles, California.

4.      At times, Defendant holds himself out as a representative of an inactive business entity named "Easebe Enterprises, Inc.," or does business under that name.

5.      California Secretary of State records show that Somen "Steve" Banerjee ("Steve"), filed articles of incorporation for a stock corporation named "Easebe Enterprises, Inc." ("Easebe") on August 29, 1975, and Easebe is currently inactive because it was suspended by the California Secretary of State on April 27, 2006, and suspended by the California Franchise Tax Board on January 2, 2007.

6.      Accordingly, Easebe has lost its rights, powers, and privileges to do business in California, and any business contracts it may enter are voidable and unenforceable.

7.      California Secretary of State records also show that Defendant filed articles of incorporation for a separate stock corporation, also named Easebe Enterprises, Inc. on January 1, 2017 ("Easebe 2"), and Easebe 2 is currently inactive because it was suspended by the California Franchise Tax Board on December 3, 2018.

8.      Accordingly, Easebe 2 has lost its rights, powers, and privileges to do business in California, and any business contracts it may enter are voidable and unenforceable.

9.      Plaintiff's claims arise under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the federal trademark statute, 15 U.S.C. §§ 1051 *et seq*., and California statutory and common law.

10.     This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal



question), and 15 U.S.C. § 1121 (Lanham Act).  This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).  Further, the Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $75,000, excusive of interest and costs.

11.     Personal jurisdiction over Defendant is vested and venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business in this district and actively solicits customers in this district.  Upon information and belief, Defendant has sold infringing products and distributed infringing advertising in this district.  Defendant owns and operates an interactive website that advertises CHIPPENDALES-branded products in this district. Plaintiff further is informed and believes that Defendant's business is conducted from his residence, which is within this judicial district.

## **FACTUAL ALLEGATIONS**

### **I.    History of the CHIPPENDALES Brand**

12.     CHIPPENDALES is one of the world's most recognized brand names providing entertainment for women, producing Broadway-style, burlesque shows worldwide for the ultimate "girls' night out."

13.     The CHIPPENDALES performance troupe was established in Los Angeles in 1979 as the world's first all-male, Las Vegas-style dance act.  From its founding through today, CHIPPENDALES dancers have been immediately recognizable by their "Cuffs and Collar" stage costume of a white shirt collar with bow tie, and white wrist cuffs, worn on an otherwise bare torso.

14.     Soon after CHIPPENDALES was created, it became a cultural phenomenon which quickly led to the opening of another club in New York City, followed by clubs in Dallas and Denver, and touring troupes performing in the U.S. and overseas.  The revue's popularity also spawned a vast array of licensed



merchandise such as wildly popular annual calendars and apparel.

15.     Today the CHIPPENDALES burlesque show continues to entertain sold-out audiences from its flagship location at the CHIPPENDALES Theatre inside the Rio Hotel & Casino in Las Vegas, as well as at U.S. and international venues visited by its touring productions.  Annually, CHIPPENDALES productions are seen by over two million people worldwide.

16.     Plaintiff brought the CHIPPENDALES to Las Vegas in 2002, where it has delighted audiences for more than 20 years.  The Las Vegas CHIPPENDALES production has featured guest hosts such as international supermodel Tyson Beckford, actors Ian Ziering and Joey Lawrence, and Dancing with the Stars and America's Next Top Model champion, Nyle DiMarco.  The show has continuously won Las Vegas Review Journal's annual awards for "Best Male Review" and "Best Bachelorette Party."

17.     Plaintiff is the third owner of the CHIPPENDALES business and brand, which it acquired in 2000.

18.     Since Plaintiff acquired the CHIPPENDALES business over 20 years ago, it has expanded the CHIPPENDALES brand beyond its signature show to include a vast array of branded goods, including apparel and accessories, exercise programs, online streaming events, gifts, slot machines and video games, and adult products.

19.     Plaintiff offers its CHIPPENDALE-branded products at its CHIPPENDALE Boutique in Las Vegas, at venues worldwide where its touring productions perform, and on its website at *Chippendales.com*, an online lifestyle and entertainment destination for women.

**II.     Plaintiff's Famous CHIPPENDALES Trademarks**

20.     Through its and its predecessors in interest's extensive use of the CHIPPENDALES mark and CHIPPENDALES design marks over the last 45 years



for a wide range of products and services, Plaintiff has developed extensive common law rights in the marks. In addition, Plaintiff owns numerous federal registrations on the Principal Register of the United States Patent and Trademark Office and foreign trademark registrations for the CHIPPENDALES mark and CHIPPENDALES design marks (Plaintiff's common law and registered marks are collectively referred to herein as the "CHIPPENDALES Trademarks"). Plaintiff's U.S. registrations are identified below.

| Trademark | Reg. No./ Reg. Date | Goods/Services | Date of First Use | Origin |
|---|---|---|---|---|
| CHIPPENDALES<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 1197438<br><br>6/8/82 | 41: Entertainment services, namely, male dance exhibitions. | 12/1/78 | Assigned to Plaintiff as part of 2000 Asset Purchase Agreement |
| CHIPPENDALES<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 1330855<br><br>4/16/85 | 16: Calenders, playing cards, posters. | 7/3/81 | Assigned to Plaintiff as part of 2000 Asset Purchase Agreement |
| CHIPPENDALES<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 2802430<br><br>1/6/04 | 9: Series of DVDs featuring music and male nightclub entertainers. | 1987 | Application filed by Plaintiff |
| CHIPPENDALES<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3127649<br><br>8/8/06 | 16: Party supplies, namely, paper napkins; pin-ups, namely, flat, cartboard poster-like cutouts of men with adjustable hands, arms, and legs.<br><br>25: Clothing, namely headwear, hats, tank tops, t-shirts, long sleeve t-shirts, sweatshirts, shorts, nightshirts and undergarments.<br><br>41: Entertainment services, namely, live theatrical and musical floor shows provided at night clubs and theaters. | 16: 7/31/10<br><br>26: 2/7/00<br><br>41: 7/3/81<br><br>45: 2/19/06 | Application filed by Plaintiff |

| | | | | |
|---|---|---|---|---|
| | | 45: Providing online greeting cards via the internet. | | |
| **CHIPPENDALES** <br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3690717 <br><br>9/29/09 | 43: Waiter services for serving drink; bar services. | 2/1/05 | Application filed by Plaintiff |
| **CHIPPENDALES** <br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3981590 <br><br>6/21/11 | 10: Electric massage applicants, namely, electric vibrating massager. | 10/1/10 | Application filed by Plaintiff |
| **CHIPPENDALES & Bow Tie Design** <br><br> CHIPPENDALES | 5203733 <br><br>5/16/17 | 10: Electric massage appliances, namely, electric vibrating massager. <br><br>16: Calendars and paper goods, namely, pin-ups, namely, flat, cardboard, poster-like cutouts of men with adjustable hands, arms and legs. <br><br>21:  Barware, namely, shotglasses. <br><br>25: Clothing, namely, headwear, hats, tank tops; t-shirts, long sleeve t-shirts, sweatshirts, shorts, nightshirts and undergarments. <br><br>41: Entertainment services, namely, live theatrical and musical floor shows provided at night clubs and theaters. | 10: 10/15 <br><br>16: 10/15 <br><br>25: 10/15 <br><br>41: 9/15 | Application filed by Plaintiff |

21.    These registrations for the CHIPPENDALES Trademarks are in full force and effect.  Copies of the USPTO status and title records of these registrations and copies of their registration certificates are attached as **Exhibit 1**.

22.    Plaintiff's Reg. No. 5203733, for its CHIPPENDALES & Bow Tie Design mark, constitutes *prima facie* evidence of Plaintiff's ownership of the mark and exclusive rights to use the mark in connection with the goods and services recited in the registration.

23.    Moreover, all of Plaintiff's other U.S. registrations for its CHIPPENDALES Trademarks have become incontestable under 15 U.S.C. § 1065, and therefore constitute conclusive evidence of Plaintiff's ownership of and exclusive rights to use the CHIPPENDALES Trademarks in connection with the goods and services recited in those registrations, namely, Reg. Nos. 1197438; 1330855; 2802430; 3127649; 3690717; and 3981590.

24.    The CHIPPENDALES Trademarks are distinctive, arbitrary, and fanciful, and are entitled to the broadest scope of protection.

25.    For the last 45 years, Plaintiff and its predecessors in interest have invested enormous amounts of time, money, and effort advertising and promoting the products and services sold under the CHIPPENDALES Trademarks throughout the United States and around the world.

26.    Through the vast promotion and investment in the CHIPPENDALES brand – combined with extensive publicity and sales – Plaintiff has acquired enormous goodwill in its CHIPPENDALES Trademarks.  The CHIPPENDALES Trademarks have become famous within the meaning of the Lanham Act, enjoy strong consumer recognition, and are recognized around the world and throughout the United States by consumers as signifying world class entertainment productions, and high-quality goods.

**III.    Timeline of CHIPPENDALES Ownership**

       **a.    Founder & First Owners**

27.    Mr. Somen Banerjee ("Steve") founded CHIPPENDALES in 1979.

28.    Upon information and belief, Steve owned and operated the CHIPPENDALES business through Easebe Enterprises Inc. (dba Chippendales) (Easebe), which, according to records of the California Secretary of State, was incorporated in August 1975.

29.    Easebe owned the rights to the name and trademark CHIPPENDALES.



- 7 -

30.     According to USPTO records, between 1981 and 1988, Easebe filed multiple U.S. trademark applications to register the marks CHIPPENDALES and CHIPPENDALES with a stylized design for various goods and services.  Those applications later obtained trademark registrations, including Reg. Nos. 1197438; 1211893; 1330855; and 1504520.

31.     In September 1993, Steve was arrested for multiple criminal acts and incarcerated.

32.     According to evidence and testimony presented in prior court proceedings involving Steve and his wife Irene Banerjee ("Irene"), at the time of Steve's arrest he was the President and sole shareholder of Easebe.

33.     That evidence and testimony also disclosed that Steve transferred all of his shares in Easebe to Irene in 1994, which ultimately was reflected in a stipulated Judgment of Divorce entered by the Honorable Hugh E. MacBeth of the Los Angeles Superior Court on August 17, 1994, which divided their marital property and provided for family support.  A copy of that Judgment, signed by both Steve and Irene, is attached as **Exhibit 2**.

34.     On October 23, 1994, Steve died while incarcerated in Los Angeles.

        **b.**     **Easebe Enterprises Inc. Sells CHIPPENDALES Business and CHIPPENDALES Trademarks to CLP Tour, Ltd. (1994)**

35.     In November 1994, Irene, as Easebe's sole officer, director, and shareholder, sold all of Easebe's assets relating to the CHIPPENDALES business to CLP Tour, Ltd. ("CLP"), including the CHIPPENDALE Trademarks and the goodwill symbolized by the marks.

36.     According to online records of the U.S. Patent and Trademark Office, on November 4, 1994, trademark assignments effectuating the transfer of U.S. Trademark Reg. Nos. 1197438, 1211893, 1330855, and 1504520 from Easebe to CLP were recorded with the USPTO on January 26, 1995.  True and correct copies



of printouts from the USPTO website showing the records for those assignments are attached as **Exhibit 3**.

37.     CLP continued to operate the CHIPPENDALES business under the CHIPPENDALES Trademarks, and licensed others to use the marks, until it sold the business to Plaintiff in 2000.

38.     Irene passed away in 2001, and according to California Secretary of State records, Easebe was suspended by that office in 2006 and suspended by the California Franchise Tax Board in 2007.

c.     **Plaintiff Chippendales USA, Inc.'s Valid Purchase of the CHIPPENDALES Business and CHIPPENDALES Trademarks**

39.     On March 30, 2000, through an Asset Purchase Agreement, Plaintiff acquired from CLP the entire CHIPPENDALES business, along with the famous CHIPPENDALES Trademarks and the underlying goodwill represented by the marks.  Plaintiff obtained all of the common law rights in the CHIPPENDALE Trademarks, as well as the following U.S. registrations and applications: Reg. Nos. 1,197,438; 1,211,893; and 1,330,855; Ser. Nos. 75/087,380 75/087,377; 75/087,376; and 75/087,375.

40.     Through that Asset Purchase Agreement, Plaintiff also acquired the domain names *Chippendales.com*; *Chippendales.org*; *Chippendale.net*; and *Chippendale.org*.

41.     The trademark assignment transferring ownership of the above-referenced registrations and applications from CLP to Plaintiff, dated March 30, 2000, was recorded with the U.S. Patent and Trademark Office on July 7, 2000.  A copy of that assignment is attached as **Exhibit 4**.

42.     Since Plaintiff acquired the CHIPPENDALES business in 2000, it has continuously used the CHIPPENDALES Trademarks in U.S. commerce to offer a



variety of goods and services and has obtained numerous U.S. and foreign registrations for its CHIPPENDALES Trademarks.

43.     Since 2000, Plaintiff has been the sole and exclusive user of the mark CHIPPENDALES and CHIPPENDALES-formative marks in the United States. Therefore, separate from the common law and registered rights in the CHIPPENDALES Trademarks it acquired as a bona fide purchaser for value in 2000, Plaintiff is the rightful owner of the CHIPPENDALES Trademarks through the nationwide common law rights it has established in the marks through its continuous and exclusive use of the marks from 2000 through present.

**IV.    <u>Defendant's Litigation Filings, Unauthorized USPTO Filings, & Infringement of the CHIPPENDALES Trademarks</u>**

44.     Defendant has no rights in any CHIPPENDALES mark.

45.     Defendant has no rights in the entity Easebe Enterprises, Inc. (Easebe), which was originally owned by Steve, later owned by Irene, and since 2006 has been suspended by the California Franchise Tax Board such that it has no corporate powers and cannot transact business in California.

46.     However, Defendant has claimed in another tribunal (Los Angeles County Superior Court) and before the U.S. Patent and Trademark Office, as well as in books he has published, and in various online channels, that he is the eldest son of Mr. Somen Banerjee (Steve) and that he was "swindled" of his rightful inheritance upon Steve's death because the "CHIPPENDALES trademark"[1] was "fraudulently sold" and "fraudulently transferred" out of Steve's estate.

47.     As detailed below, Defendant has asked the Los Angeles Superior Court

---

[1]     Although Defendant has alleged in probate filings and USPTO filings that the November 1994 sale of the singular "Chippendales trademark" was fraudulent, at that time the CHIPPENDALES business used and owned common law rights in the word mark CHIPPENDALES, as well as a stylized CHIPPENDALES logo with design, for a variety of goods and services, as well as owned four U.S. trademark registrations, Reg. Nos. 1197438, 1211893, 1330855, and 1504520.



and the USPTO to hold that the "CHIPPENDALES trademark"[2] is owned by Easebe Enterprises, Inc.[3] and/or Steve's estate.

48.    In addition, Defendant is, without authorization, offering products and services under Plaintiff's CHIPPENDALES Trademarks, including at his website located at *chippendalestruecrime.com*.

### a.    Defendant's first attempted interference with Plaintiff's trademark registrations at the USPTO (2016)

49.    On September 26, 2016, Defendant filed a petition with the U.S. Patent and Trademark Office titled "Illegal Trademark Ownership Transfer," alleging that an illegal ownership transfer occurred with respect to U.S. Reg. No. 1330855 for the mark CHIPPENDALES in Class 16.

50.    Among other things, Defendant's petition alleged that Irene "fraudulently made herself CEO of Easebe Enterprises, Inc. and sold Chippendale trademark three weeks after my father's death, he was the sole proprietor of EASEBE ENTERPRISES, INC."

51.    In December 2016, the U.S. Patent and Trademark Office issued a response to Defendant's petition, advising that it could not review Defendant's

---

[2]    Although Plaintiff has asked the Los Angeles Superior Court and USPTO to hold that the singular "Chippendales trademark" owned by Plaintiff is actually owned by Easebe and/or Steve's estate, Plaintiff owns common law and registered rights in the word mark CHIPPENDALES and other CHIPPENDALES-formative design marks, as well as the CHIPPENDALES & Bow Tie Design mark, and owns seven U.S. trademark registrations for those marks, as well as numerous foreign registrations.
[3]    It is unclear whether Defendant's references to "Easebe Enterprises, Inc." in his filings with the U.S. Patent and Trademark Office and Los Angeles Superior Court mean the California corporation that Somen Banerjee incorporated in 1975, which ultimately was suspended by the California Franchise Tax Board in 2006 (referred to throughout the complaint as "Easebe"), or the California corporation with the identical name that Defendant personally incorporated in January 2017, which was suspended by the California Franchise Tax Board in December 2018 (referred to here as "Easebe 2").



allegations because allegations of fraud and illegal ownership transfer are beyond the scope of authority of the trademark examination.

          **b.**   <u>**Defendant's Probate Action Seeking to Obtain Ownership of the "Chippendales Trademark" (2017)**</u>

52.    On March 24, 2017, Defendant filed a petition for probate with the Los Angeles County Superior Court, requesting authorization to open probate over Steve's estate. That proceeding is known as *In re: Banerjee, Somen* (Case No. 17STPB02593).

53.    In the probate proceeding, Defendant has alleged that he is Steve's son from a relationship Steve had prior to his marriage to Irene.

54.    In documents she has filed in the probate proceeding, Steve's daughter, Lindsay Banerjee ("Lindsay"), has disputed that Defendant is Steve's son.

55.    Lindsay has also represented to the probate court that Steve executed both a will and a trust in September 1991, and provided copies of those alleged documents.

56.    Steve's estate planning documents named his wife Irene as his executrix, and as a beneficiary of the trust and named successor trustee.

57.    Further, Steve's estate planning documents asserted that he had only two children, his daughter Lindsay and son Christian, with an express representation that he has "had no other children."

58.    Both Lindsay and Christian are named in Steve's estate planning documents as remainder beneficiaries.

59.    Defendant is not referenced in Steve's estate planning documents.

60.    Defendant has alleged in various of his filings in the probate action that named and unnamed persons have illegally withheld inheritance he is "owed" from Steve's estate.

61.    For example, in a status report Defendant filed on March 30, 2023, in



1  response to the question "is there any pending litigation involving the estate,"

2  Defendant selected "yes" and wrote: *"Petitioner's stepmother's sister Helen*

3  *Maryman, sister Lindsay Banerjee and brother Christian Banerjee who stole funds*

4  *from the estate. And provided no inheritance to Jesse Banerjee. No full accounting*

5  *of the estate was made"* and *"Jesse Banerjee was not provided his inheritance or his*

6  *royalties from his father's lucrative trademark"* (emphasis added).

7          **c.**    **Defendant's Books Claiming Ownership to the**

8                  **CHIPPENDALES Trademarks (December 2021 and June**

9                  **2022)**

10      62.    In December 2021, Defendant self-published a book titled "Bowtie

11  Legacy," detailing his claims that he was "swindled" out of his "rightful inheritance"

12  (i.e., the CHIPPENDALES Trademarks and royalties) because Easebe's 1994 sale to

13  CLP of the CHIPPENDALES assets and Trademarks was allegedly "fraudulent" and

14  invalid, and therefore Plaintiff's purchase of the CHIPPENDALES assets and

15  Trademarks in 2000 was also fraudulent and invalid.

16      63.    In June 2022, Defendant self-published a book titled "Chippendales True

17  Crime Story," with the identical content as "Bowtie Legacy" and thus the same

18  allegations, just packaged under a different name and front cover.

19      64.    In Defendant's books, he asserts that being named administrator of

20  Steve's estate meant that he would own or control all the CHIPPENDALES assets,

21  intellectual property, and goodwill: *"The court had finally declared me the*

22  *administrator of the Banerjee estate twenty-six years after [Steve's] death. Now*

23  *Easebe, Inc., the corporation that owns all Chippendales properties, including but*

24  *not limited to, the dance troupe, television and movie rights, and merchandising was*

25  *back in the hands of a Banerjee."*

26          **d.**    **Defendant's continued interference with Plaintiff's**

27                  **CHIPPENDALES trademark registrations (Late 2022 & Early**

28

**2023)**

65.     In late 2022 and early 2023, Defendant continued to interfere with Plaintiff's registered CHIPPENDALES Trademarks by making several unauthorized filings regarding Plaintiff's U.S. Trademark Registration Nos. 1197438, 1330855, 2802430, 3127649, 3690717, 3981590, and 5203733.  Defendant listed "Easebe Enterprises Inc." as the owner in his filings, and signed the forms as "Estate Administrator," listing his personal mailing and email addresses.

66.     For example, on October 28, 2022, Defendant filed with the USPTO's Assignment Recordation Branch a signed "declaration" alleging that the November 1994 assignment of the CHIPPENDALES business and trademarks from Easebe to CLP (recorded with the USPTO) was invalid because Irene "fraudulently misrepresented herself as the President of Easebe" when she "did not have actual authority to make legally binding decisions for Easebe or its properties at the time." Defendant requested that the USPTO "record a corrective assignment" to identify Easebe as the owner of the pertinent trademark registrations.

67.     On November 22, 2022, and again on December 28, 2022, Defendant filed that same "declaration" alleging that the November 1994 trademark assignment from Easebe to CLP was fraudulent and requesting that the USPTO "record a corrective assignment" identifying Easebe as the owner of the trademark registrations.

68.     On December 28, 2022, Defendant attempted to file a purported specimen of use for Plaintiff's U.S. Reg. No. 1197438 for the mark CHIPPENDALES in Class 41 (for entertainment services, namely, male dance exhibitions) and stated in the form: "*Chippendales male review, by the creator's first son.  A new generation of entertainment.  Fashion shows, country events, fair shows, and brand Ambassadors.  The attached specimen was in use in commerce on or before the filing date of this request.*"  In the field for "explanation of filing,"



1   Defendant stated: "*Hello, have been approved a change by erroneous recording done*
2   *manually and like to change title too please.*"

3       69.     On December 28, 2022, January 6, 2023, and February 28, 2023,
4   Defendant filed multiple requests to update ownership information for Plaintiff's
5   registered CHIPPENDALES and CHIPPENDALES & Design trademarks, Reg. Nos.
6   1197438; 2802430; 3127649; 3690717; 3981590; and 5203733, trying to change the
7   owner from Plaintiff Chippendales USA, LLC to "Easebe Enterprises Inc.," again
8   listing his personal mailing and email addresses for the owner's contact information.

9       70.     Of the six registered CHIPPENDALES Trademarks that Defendant tried
10  to put in Easebe's name, only one – Reg. No. 1197438 - was in existence in 1994
11  when Easebe sold the CHIPPENDALES business, its trademarks, and associated
12  goodwill to CLP.

13      71.     Therefore, even assuming, *arguendo*, that Defendant made his
14  unauthorized filings with the USPTO regarding Plaintiff's CHIPPENDALES
15  Trademarks in a misguided attempt to administer Steve's estate, Defendant has
16  absolutely no legitimate reason for trying to change the ownership of the five later-
17  registered CHIPPENDALES Trademarks to Easebe.

18      72.     Defendant's unauthorized filings caused the U.S. Patent and Trademark
19  Office to change many of the records for Plaintiff's CHIPPENDALES registrations to
20  inaccurately identify Easebe as the owner, causing Plaintiff significant concern as
21  Defendant was somehow able to bypass the USPTO's mandatory identity verification
22  safeguards to file the unauthorized documents and cast a cloud over Plaintiff's
23  interests in its famous CHIPPENDALES Trademarks.

24      73.     Plaintiff had to file requests with the USPTO for several of its
25  registrations to get the ownership records corrected.

26          e.     **Defendant Initiates an Independent Civil Action Against**
27                 **Plaintiff through a Petition Filed in the Probate Action (April**

28



**2023)**

74.     Most recently, on April 3, 2023, Defendant filed in the probate action a petition titled, "**Petition For: An Order Confirming USPTODecision [sic] On Chippendales Trademark and All Series Partaining [sic] to Chippendales As Forming Part of the Estate of Somen Banerjee; Requesting §859 Double Damages Against Chippendales USA LLC**"[4] (Defendant's "§ 850 Petition").

75.     The Petition was filed pursuant to Cal. Probate Code §§ 850(a)(3)(B) and 859.[5]  Cal. Probate Code § 850(a)(3)(B) allows a trustee or any interested person to seek a court order declaring the trustee's interest in "real or personal property, title to or possession of which is held by another."  Cal. Probate Code § 859 allows for recovery of "twice the value of the property recovered" in addition to any other remedies, if a court finds a person wrongfully took, concealed, or disposed of property belonging to the estate of a decedent.

76.     Defendant's § 850 Petition alleges that the CHIPPENDALES trademark[6] was an asset of decedent Somen Banerjee that, in 1994 was worth $50 million dollars, and that same year was "fraudulently sold" by Irene to CLP for $1 million dollars.

77.     Defendant's § 850 Petition also alleges that when Plaintiff purchased the CHIPPENDALES trademark it was a "fraudulent purchase" and Plaintiff "did not buy it as any legitimate business."

78.     Further, Defendant's § 850 Petition alleges that "the United State [sic] Patent and Trademark Office did give a decision to the effect that the sale and

---

[5]     The document's footer identifies the filing as "Petition to Confirm Assets of the Estate [Probate Code § 850; 859]."

[6]     Again, although Defendant alleges that the "Chippendales trademark" was fraudulently sold in November 1994, at that time the CHIPPENDALES business owned common law and registered rights in the word mark CHIPPENDALES as well as a stylized CHIPPENDALES logo with design, for a variety of goods and services, and owned four U.S. trademark registrations for those two marks, Reg. Nos. 1197438, 1211893, 1330855, and 1504520.



purchase of Chippendales trademark from Irene Banerjee by CLP TOUR was
fraudulent and thereby set aside the said sale of the Chippendales trademark.
Therefore voiding any sale or transaction after Somen Banerjee [sic] death," and
attaches a USPTO "notice of recordation of assignment document" for documents
Plaintiff filed with the USPTO Assignment Recordation Branch on November 1,
2022, regarding Chippendales' registered CHIPPENDALES trademarks.

79.     Contrary to Plaintiff's allegations, the document that he mischaracterizes
as a "decision" by the United States Patent and Trademark Office is merely a filing
receipt for the unauthorized filing he made with the USPTO's Assignment
Recordation Branch on October 28, 2022, attempting to change ownership of
Plaintiff's U.S. Reg. No. 1197438 (for the mark CHIPPENDALES in Class 41 for
"entertainment services, namely, male dance exhibitions) from Plaintiff to Easebe
Enterprises, Inc.  This filing receipt does not constitute any decision by the USPTO
regarding the validity of a trademark assignment or the effect such a document has on
the title to a registration.

80.     The USPTO's recording of document filed with the Assignment
Recordation Branch is solely a ministerial act, and that Branch does not examine the
substance of documents submitted for recording for the purpose of determining
validity.

81.     Defendant's § 850 Petition seeks an order: a) "upholding the decision of
the USPTO holding that the sale of the CHIPPENDALES trademark was fraudulent";
b) finding that the CHIPPENDALES trademark currently owned by Plaintiff is part
of Mr. Somen Banerjee's estate; c) transferring the CHIPPENDALES trademark
owned by Plaintiff to Mr. Somen Banerjee's estate, as administered by Defendant;
and d) restraining Plaintiff from using the CHIPPENDALES trademark.

82.     Regarding California Probate Code § 859, Defendant – puzzlingly –
seeks a monetary penalty against Chippendales of "twice the value of the property

1  recovered" – not for any alleged wrongful taking, concealment, or disposal of estate

2  property by Plaintiff, but for Helen Maryman's alleged bad faith misappropriation of

3  property from Steve's estate.

4       83.    Plaintiff has no relationship or association with Ms. Maryman.

5       84.    Defendant's § 850 Petition is, obviously, adversarial in nature and

6  qualifies as a "civil action" properly removable within the meaning of 28 U.S.C. §

7  1441(b).  Plaintiff will be removing Defendant's § 850 Petition to this Court based

8  upon diversity of citizenship.

9          **f.**    **<u>Defendant's Infringement of the CHIPPENDALES</u>**

10                **<u>Trademarks</u>**

11       85.    In addition to Defendant's ongoing interference with Plaintiff's

12  legitimately purchased and use-acquired trademark rights, Defendant is offering for

13  sale and selling various products and services making unauthorized uses of the

14  CHIPPENDALES Trademarks.

15       86.    Upon information and belief, sometime during July 2022, Defendant

16  launched a website at *chippendalestruecrime.com.*

17       87.    The top of Defendant's website prominently displays the

18  CHIPPENDALES mark as well as an unauthorized use of Plaintiff's

19  CHIPPENDALES & Bow Tie Design mark.  Moreover,

20  Defendant's website has even copied the color scheme, layout, and design features of

21  Plaintiff's website:

22

23

24

25

26

27

28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25    88.    Further, Defendant's website at *chippendalestruecrime.com* offers and

26  sells apparel, mobile phone cases, and mugs bearing the mark CHIPPENDALES

27  TRUE CRIME STORY and a bow tie design that infringes of Plaintiff's

28

1  CHIPPENDALES & Bow Tie Design mark.  Just as Defendant's website copied

2  Plaintiff's website, Defendant's merchandise copies the color scheme, layout, and

3  design features of Plaintiff's authentic CHIPPENDALES merchandise:

4

| Plaintiff's Authentic CHIPPENDALES Merchandise | Defendant's Infringing Merchandise |
|---|---|
|  https://boutique.chippendales.com/chippendales-long-sleeve-tee/ |  https://chippendalestruecrime.com/product/unisex-long-sleeve-tee/ |
|  https://boutique.chippendales.com/black-logo-v-neck/ |  https://chippendalestruecrime.com/product/mens-premium-heavyweight-tee/ |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



https://boutique.chippendales.com/chippendales-baseball-cap/



https://chippendalestruecrime.com/product/dad-hat/



https://boutique.chippendales.com/stack-hoodie/



https://chippendalestruecrime.com/product/chippendales-true-crime-mens-premium-heavyweight-tee/



https://boutique.chippendales.com/chippendales-tall-coffee-mug/



https://chippendalestruecrime.com/product/black-glossy-mug/

24
25
26
27
28

89.    Further, Defendant advertises, promotes, and offers for sale services in nightclub promotion, production of live shows for women, nightclub photography, and creative marketing under various CHIPPENDALES-formative marks that misrepresent his association with Plaintiff's CHIPPENDALES brand in ways that are



likely to cause confusion among consumers as to the source of the infringing services, and are likely to cause the public to falsely associate Defendant with Plaintiff and its authentic CHIPPENDALES goods and services.

90.    For example, Defendant advertises himself and his services using the mark **CHIPPENDALES HEIR** on multiple social media platforms and commercial websites:





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   Further, Defendant regularly posts photos depicting nightlife to social

18   media that are branded with an infringing **CHIPPENDALES HEIR logo** to promote

19   his entertainment services:

20
21
22
23
24
25
26
27



28



92.    Defendant also advertises himself and his services under other infringing marks, such as "**CHIPPENDALES ESTATE ADMINISTRATOR**," and "**CHIPPENDALES AUTHORITY**," and even misrepresents himself as the "**CHIPPENDALES CHIEF LEGAL STRATEGIST**" and the "**Strategic Administrator of the world name trademark, CHIPPENDALES**."

https://www.linkedin.com/in/jesse-banerjee/

**Jesse Banerjee** · 2nd
CHIPPENDALES Chief Legal Strategist
Santa Monica, California, United States · Contact info
500+ connections

Easebe Enterprises, Inc
3 yrs 5 mos
Santa Monica, California, United States

  in Sophisticated fraud - Trademark - Embezzlement - Offshore Bank theft
Self-employed
Nov 2022 - Present · 7 mos
On-site

TBD Strategic Estate Administrator, of the world name trademark, CHIPPENDALES. which was stolen by my stepmother Irene Kathryn Tychowskyj AKA Irene Banerjee who was divorced from my father, and her s ...see more

Chippendales Estate Administrator
Full-time
Jan 2020 - Present · 3 yrs 5 mos

Recovering assets embezzled by my stepmother and her sister Helen Maryman and her husband Brad Mary mary man who threaten my Friend Oscar he will kill him or me....   ...see more

Skills: international whitecrime · Probate Litigation · currupt public official · investiagtive jornalist · true crime author · trademark litagtion · Offshore Operations · Forencic investigation

The Most TWISTED Case You've Ever Heard | Chippendales True Crime by the first son Jesse
Written with facts and images of important documents.
actual court transcripts, confessions, and undisclosed FBI files ...

Nightclub Partner / Live Show Producer
Possh Men TM · Full-time
Jun 2021 - Present · 2 yrs
Hollywood California

Producing consistent fun live entertainment that caters to women in their late 20s and beyond. continuing the established Chippendales' legacy in the city its founder called home: Los Angeles.



93.    In addition, on April 24, 2023, Defendant filed articles of organization with the California Secretary of State to establish a limited liability company named "**Chippendales LLC**."

## CLAIMS FOR RELIEF

## COUNT I

## Declaratory Judgment as to Plaintiff's Ownership Rights in the CHIPPENDALES Trademarks

94.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

95.    Defendant's actions have created an actual, substantial, and immediate controversy between the parties concerning the ownership of and exclusive rights to use the CHIPPENDALES Trademarks, in that:

a. Defendant has repeatedly alleged that the November 1994 sale by now-suspended Easebe of rights in the "CHIPPENDALES trademark"[7] to CLP was "fraudulent," the subsequent 2000 sale of those rights from CLP to Plaintiff was also "fraudulent," and thus the trademark belongs to the estate of the late Steve Banerjee, and ultimately Defendant, as an alleged "heir" of the estate.

b. Taking the position that the CHIPPENDALES Trademarks do not belong to Plaintiff, their record owner, but to himself and/or the estate of Steve Banerjee, Defendant has repeatedly attempted to change Plaintiff's trademark registration records with the U.S. Patent and Trademark Office to remove Plaintiff as the owner and replace it with Easebe Enterprises Inc.

c. Further, Defendant has apparently taken the position that the

---

[7]    *See* footnotes 1 & 4.



CHIPPENDALES Trademarks belong to himself and/or the estate of Steve Banerjee such that he may use the Trademarks in commerce, as Defendant is advertising and offering for sale various products and services making unauthorized uses of the CHIPPENDALES Trademarks, and Defendant has represented to the U.S. Patent and Trademark Office that he is using a CHIPPENDALES mark for entertainment services that are identical to the services that Plaintiff and its predecessors-in-interest have offered under the CHIPPENDALES Trademarks for 45 years, namely, "male dance exhibitions."

d. In addition, Defendant has recently established a California limited liability company named "**Chippendales, LLC**."

e. On the other hand, Plaintiff contends that the November 1994 sale from Easebe to CLP was not fraudulent because prior to his death on October 23, 1994, Easebe's sole shareholder, Steve Banerjee, transferred all his interest in Easebe to his wife Irene, and thus she had authority to act for Easebe and sell the CHIPPENDALES assets and CHIPPENDALE trademarks to CLP in November 1994.  Therefore, the 2000 sale from CLP to Plaintiff of the assets and CHIPPENDALE Trademarks was valid and Plaintiff is the sole, rightful owner of the marks.

f. Moreover, separate from the common law and registered rights in the CHIPPENDALES Trademarks that Plaintiff acquired in 2000 as a bona fide purchaser for value, Plaintiff is the rightful owner of the CHIPPENDALES Trademarks through the nationwide common law rights it has established in the marks through its continuous and exclusive use of the marks from 2000



1     through present.

2         96.     Plaintiff is entitled to a judicial determination and declaration of the

3     rights of the parties with respect to the CHIPPENDALES Trademarks, specifically, a

4     determination that on account of Plaintiff's status as a good faith purchaser for value

5     and/or on account of its preexisting, continuous, exclusive, decades-long use of the

6     CHIPPENDALES Trademarks, Plaintiff is the only rightful owner of the marks, and

7     that Defendant's unauthorized use of the marks constitutes trademark infringement,

8     trademark dilution, and unfair competition under federal, state, and common law.

9                              **COUNT II**

10                     **Federal Trademark Infringement**

11                        **(15 U.S.C. § 1114)**

12        97.     Plaintiff repeats and incorporates by reference the allegations in the

13    preceding paragraphs.

14        98.     Plaintiff owns numerous federal registrations for its CHIPPENDALES

15    mark and CHIPPENDALES & Bow Tie Design mark, namely, U.S. Reg. Nos.

16    1197438; 1330855; 2802430; 3127649; 3690717; 3981590; and 5203733.  Through

17    Plaintiff and Plaintiff's predecessors in interest, the CHIPPENDALES mark has been

18    used continuously since 1978.

19        99.     The CHIPPENDALES Trademarks are valid and enforceable, and

20    certain of them have attained incontestable status.

21        100.    In connection with the sale, offering for sale, distribution, or

22    advertising of goods and services, Defendant has used words and symbols that

23    infringe upon the CHIPPENDALES Trademarks.  Defendant's conduct has caused,

24    and, unless enjoined by this Court, will continue to cause, a likelihood of confusion

25    and deception of members of the trade and public, and, additionally, injury to

26    Plaintiff's goodwill and reputation as symbolized by Plaintiff's CHIPPENDALES

27    Trademarks, for which Plaintiff has no adequate remedy at law.

28



101.   Defendant's conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's CHIPPENDALES Trademarks to Plaintiff's great and irreparable harm.

102.   These acts of trademark infringement have been committed deliberately and with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

103.   Defendant has caused and is likely to continue causing substantial injury to the public and to Plaintiff; therefore, Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT III

### Trademark Counterfeiting

### (15 U.S.C. § 1114)

104.   Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

105.   Plaintiff owns the CHIPPENDALES Trademarks.

106.   Without Plaintiff's authorization, Defendant has used in commerce spurious marks that are identical with, or substantially indistinguishable from, the CHIPPENDALES Trademarks, in connection with the same goods described in Plaintiff's federal registrations for those marks, namely, various types of apparel.

107.   Defendant's unauthorized use of spurious marks that are identical with, or substantially indistinguishable from, the CHIPPENDALES Trademarks falsely represents Defendant's goods as emanating from or being authorized by Plaintiff, and places beyond Plaintiff's control the quality of goods offered and sold under the CHIPPENDALES Trademarks.

108.   Defendant's unauthorized use of spurious marks that are identical with, or substantially indistinguishable from, the CHIPPENDALES Trademarks in



connection with the promotion, sale, and distribution of apparel is likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendant's goods, and is likely to deceive the public into believing that Defendant's goods emanate from Plaintiff, are sponsored, endorsed, or approved by Plaintiff, are subject to Plaintiff's quality control measures, or are otherwise associated with Plaintiff.

109.   Defendant's conduct has been intentional, reckless, and willful.

110.   As a result of Defendant's unauthorized use of spurious marks that are identical with, or substantially indistinguishable from, the CHIPPENDALES Trademarks, Defendant has used counterfeit marks, as that term is defined in Section 34(d)(1)(B) of the Lanham Act, and Defendant is accordingly liable under the anti-counterfeiting provisions of the Lanham Act.

111.   Defendant is likely to continue causing substantial injury to the public and to Plaintiff, which has no adequate remedy at law, and Plaintiff is entitled to injunctive relief, an accounting of profits, damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1114, 1116, and 1117.  Additionally, pursuant to 15 U.S.C. § 1117(b), Plaintiff is entitled to trebling of the greater of profits and damages, and to prejudgment interest.  Alternatively, pursuant to 15 U.S.C. § 1117(c), Plaintiff is entitled to recover statutory damages for Defendant's use of counterfeit marks.

**COUNT IV**

**Federal Unfair Competition**

**(15 U.S.C. § 1125(a))**

112.   Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

113.   Defendant's use of marks that are confusingly similar to Plaintiff's CHIPPENDALES Trademarks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods



are manufactured or distributed by Plaintiff, or Defendants' services are offered and rendered by Plaintiff, or that Defendant's goods and services are affiliated, connected, or associated with Plaintiff, or have Plaintiff's sponsorship, endorsement, or approval.

114.   Defendant's conduct constitutes the use of symbols or devices tending falsely to describe the infringing products and services, within the meaning of 15 U.S.C. § 1125(a).  Defendant's conduct has caused, and unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by its CHIPPENDALES Trademarks, for which Plaintiff has no adequate remedy at law.

115.   Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill of Plaintiff's CHIPPENDALES Trademarks, to Plaintiff's great and irreparable injury.

116.   Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff.  Plaintiff is therefore entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### COUNT V
### Federal Trademark Dilution
### (15 U.S.C. § 1125(c))

117.   Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

118.   For nearly 45 years, Plaintiff and its predecessors in interest have exclusively and continuously promoted and used the CHIPPENDALES Trademarks in the United States.  The CHIPPENDALES Trademarks became famous and well-known symbols of Plaintiff and its products and services among the general public



in the United States well before Defendant began advertising, promoting, offering for sale, distributing, or rendering goods and services under confusingly similar CHIPPENDALES marks.

119.   Defendant is making use in commerce of confusingly similar imitations of Plaintiff's CHIPPENDALES Trademarks that dilute and are likely to dilute the distinctiveness of Plaintiff's famous CHIPPENDALES Trademarks by eroding the public's exclusive identification of those famous marks with Plaintiff, tarnishing and degrading the positive associations of those famous marks, and otherwise lessening the capacity of the CHIPPENDALES Trademarks to identify and distinguish Plaintiff's goods and services.

120.   Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's CHIPPENDALES Trademarks or to cause dilution of the marks, to Plaintiff's great and irreparable injury.

121.   Defendant has caused, and unless enjoined by this Court, will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous CHIPPENDALES Trademarks in violation of 15 U.S.C. § 1125(c).

122.   Plaintiff is therefore entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

**COUNT VI**

**California Trademark Dilution**

**(California Business & Professions Code § 14330)**

123.   Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

124.   Plaintiff's CHIPPENDALES Trademarks are strong and well



recognized marks and thus entitled to protection as "distinctive marks" under the California Anti-Dilution statute, California Business and Professions Code § 14330.

125.   By, without limitation, advertising, promoting, offering for sale, distributing, and rendering goods and services using CHIPPENDALES marks, Defendant has caused, and unless enjoined by this Court, will continue to cause, a likelihood of injury to Plaintiff's business reputation and/or of dilution of the distinctive quality of Plaintiff's CHIPPENDALE Trademarks in violation of California Business and Professions Code § 14330.

126.   Defendant's violation of California's Anti-Dilution law has caused, and unless enjoined by this Court, will continue to cause Plaintiff irreparable harm. Therefore, in addition to monetary damages, Plaintiff is entitled to preliminary and permanent injunctive relief.

<u>**COUNT VII**</u>

<u>**California Unfair Business Practices**</u>

**(California Business & Professions Code § 17200 _et seq._)**

127.   Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

128.   The above-described acts and practices by Defendant are likely to mislead or deceive the general public, and therefore constitute fraudulent business practices in violation of California Business and Professions Code § 17200 _et seq_.

129.   Defendant's unfair, unlawful, and fraudulent business practices described above present a continuing threat and are meant to deceive members of the public.

130.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been injured in fact and has lost money and profits and has suffered injury to its reputation and goodwill.  Such harm will continue unless Defendant's acts are enjoined by the Court.  Plaintiff has no adequate remedy at law, and



1  therefore is entitled to an injunction prohibiting Defendant from continuing the

2  practices described above.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in

5  its favor for each claim set forth above and award Plaintiff relief including, but not

6  limited to, the following:

7  1.  An order declaring that the March 30, 2000, sale of the

8  CHIPPENDALES business, CHIPPENDALES Trademarks, and the associated

9  goodwill from CLP to Plaintiff is valid and binding;

10  2.  An order declaring that Plaintiff is the rightful and exclusive owner of

11  common law and registered rights in the CHIPPENDALES Trademarks, as acquired

12  through the March 30, 2000 agreement;

13  3.  An order declaring that Plaintiff is the rightful and exclusive owner of

14  common law and registered rights in the CHIPPENDALES Trademarks, as acquired

15  by its more than 20 years of exclusive and continuous use of the marks;

16  4.  An order declaring that Defendant Jesse Banerjee has no legitimate

17  interest in the CHIPPENDALES Trademarks or any marks or domain names

18  confusingly similar thereto;

19  5.  An order declaring that Easebe Enterprises, Inc., incorporated in

20  California by Somen Banerjee on August 29, 1975 (currently suspended by both the

21  California Secretary of State and the California Franchise Tax Board) has no

22  legitimate interest in the CHIPPENDALES Trademarks or any marks or domain

23  names confusingly similar thereto;

24  6.  An order declaring that Easebe Enterprises, Inc., incorporated in

25  California by Defendant on January 1, 2017 (currently suspended by the California

26  Franchise Tax Board) has no legitimate interest in the CHIPPENDALES

27  Trademarks or any marks or domain names confusingly similar thereto;

28

7.     A permanent injunction prohibiting Defendant—whether under his personal capacity using his own name, under any alleged role as administrator of Mr. Somen Banerjee's estate, acting on behalf of the any entity named Easebe Enterprises, Inc., or in any other capacity—from filing any documents with the U.S. Patent and Trademark Office for or related to Plaintiff's CHIPPENDALES Trademarks, or otherwise related to Plaintiff;

8.     A permanent injunction prohibiting Defendant, and his agents, employees, or persons acting in concert or participation with him from interfering in any manner, in any jurisdiction, with Plaintiff's ownership or use of its CHIPPENDALES Trademarks;

9.     An order that Defendant and his agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with him, and/or any person(s) acting for, with, by, through or under him, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

      a.  Using, in connection with the advertising, promotion, offering for sale, sale, distribution, and rendering of any good or service , any word, term, name, symbol, device, or combination that so resembles Plaintiff's CHIPPENDALES Trademarks as to be likely to cause confusion, mistake, or deception, including, without limitation, the marks, names, and phrases CHIPPENDALES; CHIPPENDALES & Bow Tie Design (*see* U.S. Reg. No. 5203733); CHIPPENDALES, LLC; CHIPPENDALES TRUE CRIME STORY; CHIPPENDALES HEIR; CHIPPENDALES ESTATE ADMINISTRATOR; CHIPPENDALES AUTHORITY; CHIPPENDALES CHIEF LEGAL STRATEGIST; and "Strategic Administrator of the

world name trademark, CHIPPENDALES";

b. Using any word, term, name, symbol, device, or combination that (i) causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendant or its products or services with Plaintiff, or as to the origin of Defendant's products or services, (ii)  contains any false designation of origin, false or misleading description or representation of fact, (iii) contains any false or misleading advertising, or (iv) causes likely dilution of any of the CHIPPENDALES Trademarks, including, without limitation, the marks, names, and phrases CHIPPENDALES; CHIPPENDALES & Bow Tie Design (see U.S. Reg. No. 5203733); CHIPPENDALES, LLC; CHIPPENDALES TRUE CRIME STORY; CHIPPENDALES HEIR; CHIPPENDALES ESTATE ADMINISTRATOR; CHIPPENDALES AUTHORITY; CHIPPENDALES CHIEF LEGAL STRATEGIST; and "Strategic Administrator of the world name trademark, CHIPPENDALES;

c. Further infringing Plaintiff's rights in and to its CHIPPENDALES Trademarks, or otherwise damaging Plaintiff's goodwill or business reputation;

d. Further diluting the famous CHIPPENDALES Trademarks; and

e. Otherwise competing unfairly with Plaintiff in any manner.

10. An order requiring Defendant to deliver up for impoundment and for destruction, all apparel and other products, signs, advertising, promotional materials, or other materials in Defendant's possession, custody, or control that are found to

adopt, infringe, or dilute Plaintiff's CHIPPENDALES Trademarks or that otherwise unfairly compete with Plaintiff and its products and services;

11.     An order awarding Plaintiff its damages and lost profits, and Defendant's profits, in an amount to be proven at trial;

12.     An order that such damages and profits be trebeled and awarded to Plaintiff and that it be awarded its costs, attorneys' fees, and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendant's willful, intentional, and deliberate acts in violation of the Lanham Act;

13.     An order awarding Plaintiff prejudgment and post judgment interest; and

14.     An order awarding to Plaintiff all such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Chippendales USA, LLC demands that this action be tried to a jury.

Dated:  May 12, 2023             Respectfully submitted,

                                 KILPATRICK TOWNSEND & STOCKTON LLP


By:   _____*/s/ Evan Nadel*_____

Evan S. Nadel
Rita Weeks
Marc A. Lieberstein

*Attorneys for Plaintiff*
*Chippendales USA, LLC*

