Evan S. Nadel (CA Bar No. 213230)
KILPATRICK TOWNSEND & STOCKTON LLP
*ENadel@kilpatricktownsend.com*
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:   (415) 576-0200
Facsimile:    (415) 576-0300

Rita Weeks (CA Bar No. 232396)
*Rweeks@kilpatricktownsend.com*
Marc A. Lieberstein (admitted *pro hac vice*)
*MLieberstein@kilpatricktownsend.com*
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 775-8700
Facsimile:   (212) 504-9566

*Attorneys for Plaintiff*
*Chippendales USA, LLC*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIPPENDALES USA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JESUS "JESSE" BANERJEE, dba EASEBE ENTERPRISES INC.,<br><br>Defendant. | Case No. 2:23-cv-03676-PA (PDx)<br>*Judge:   Hon. Percy Anderson*<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JESSE BANERJEE**<br><br>Hearing Date:  August 21, 2023<br>Time:              1:30 p.m.<br>Courtroom:      9A |





**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JESSE BANERJEE**
Case No.:  2:23-cv-03672 PA (PDx)

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................ 2

   **A.**   Procedural Background ..................................................................... 2

   **B.**   Plaintiff and its World-Famous CHIPPENDALES Brand .............. 2

   **C.**   Plaintiff's Rights In and Registrations for its Famous CHIPPENDALES Trademarks ............................................................. 3

   **D.**   Defendant's Counterfeit and Infringing Goods ............................... 5

   **E.**   Defendant's Infringing Services ...................................................... 6

   **F.**   Defendant's Misrepresentations to the U.S. Patent and Trademark Office ...... 6

   **G.**   Defendant's Probate Action Concerning the CHIPPENDALES Brand ........... 7

III.    ARGUMENT ............................................................................................ 8

   **A.**   The *Eitel* Factors Favor Entry of Default Judgment ....................... 8

     **1.**   Plaintiff Will Be Prejudiced Absent a Default Judgment ............. 9

     **2.**   Plaintiff's Complaint is Sufficiently Pled and Its Claims Are Meritorious. 10

       **a.** Plaintiff's Federal Claims for Trademark Infringement and Unfair Competition, and its California Claim for Unfair Competition ................ 10

         i.  Plaintiff's Protectable Ownership Interest in the CHIPPENDALES Marks ............................. 11

         ii. Defendant's Unauthorized Use of the CHIPPENDALES Marks Is Likely to Cause Confusion ........................... 11

       **b.** Plaintiff's Federal Counterfeiting Claim ............................. 12

       **c.** Plaintiff's Federal and State Law Dilution Claims ................... 13

       **d.** Plaintiff's Declaratory Judgment Claim ............................. 14

     **3.**   The Damages Sought By Plaintiff Favor Default Judgment ....... 15

     **4.**   No Dispute Exists As To Material Facts ..................................... 16

     **5.**   The Default Entered Against Defendant Did Not Result from Excusable



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S  MOTION
FOR DEFAULT JUDGMENT AGAINST DEFENDANT JESSE BANERJEE                                    i
Case No.:  2:23-cv-03672 PA (PDx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Neglect ........................................................................................ 16

   **6.**  Defendant's Failure to Answer Makes a Decision on the Merits Impossible 17

   **7.**  Summary of the *Eitel* Factors ...................................................... 17

 **B.**  Plaintiff's Requested Remedies are Warranted, Authorized, and Substantiated .......................................................................... 18

   **1.**  Plaintiff is Entitled to Injunctive Relief ...................................... 18

   **2.**  Plaintiff is Entitled to a Declaratory Judgment ............................ 18

   **3.**  Plaintiff is Entitled to Statutory Damages .................................... 20

   **4.**  Plaintiff Is Entitled to Attorneys' Fees And Costs ........................ 21

IV.    CONCLUSION ...................................................................... 22

Local Rule 11-6.2 Certificate of Compliance .......................................... 23



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S  MOTION
FOR DEFAULT JUDGMENT AGAINST DEFENDANT JESSE BANERJEE
Case No.:  2:23-cv-03672 PA (PDx)

ii

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Benny v. Pipes*,

5
    799 F.2d 489 (9th Cir. 1986) ................................................................. 8

6

*Century 21 Real Estate Corp. v. Sandlin*,

7
    846 F.2d 1175 (9th Cir. 1988) ............................................................. 18

8

*Craigslist, Inc. v. Naturemarket, Inc.*,

9
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) .............................................. 10

10

*Deckers Outdoor Corp. v. Granger*,
    No. 2:10-CV-06476-JHN-MANx, 2011 WL 13217386 (C.D. Cal.

11
    Feb. 24, 2011) ..................................................................................... 17

12

*Derek Andrew, Inc. v. Poof Apparel Corp.*,

13
    528 F.3d 696 (9th Cir. 2008) ......................................................... 20, 21

14

*DIRECTV, Inc. v. Hoa Huynh*,

15
    503 F.3d 847 (9th Cir. 2007) ..................................................... 8, 9, 10

16

*Eitel v. McCool*,

17
    782 F.2d 1470 (9th Cir. 1986) .................................................... *passim*

18

*Elektra Entm't Grp. Inc. v. Crawford*,

19
    226 F.R.D. 388 (C.D. Cal. 2005) .......................................................... 9

20

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2008) ............................................................... 13

21

*Jesse Banerjee v. Chippendales USA, LLC*,

22
    Case No. 2:23-cv-03676-PA ................................................... 15, 17, 22

23

*Kinsley Tech. Co. v. Ya Ya Creations, Inc.*,

24
    No. 2:20-CV-04310-ODW-KSx, 2022 WL 3908831 (C.D. Cal. Aug.

25
    30, 2022)........................................................................................ 10, 11

26

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004) .......................................................................... 11

27

28



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S  MOTION
FOR DEFAULT JUDGMENT AGAINST DEFENDANT JESSE BANERJEE
Case No.:  2:23-cv-03672 PA (PDx)

iii

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
   633 F.3d 1158 (9th Cir. 2011) ............................................................... 13

*Levi Strauss & Co. v. Toyo Enter. Co.*,
   665 F. Supp. 2d 1084 (N.D. Cal. 2009)....................................................... 9

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
   658 F.3d 936 (9th Cir. 2011) ................................................................. 12

*Nestle USA, Inc. v. Gunther Grant, Inc.*,
   No. CV-13-6754 MMM (ASX), 2014 WL 12558008 (C.D. Cal. May
   13, 2014)................................................................................ 12, 16

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ............................................................... 10

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002)................................................... 8, 17

*Philip Morris USA Inc. v. Castworld Prods., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) ......................................................... 9, 17

*Phillip Morris USA Inc. v. Shalabi*,
   352 F. Supp. 2d 1067 (C.D. Cal. 2004)................................................... 12

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ............................................................... 21

*Rolex Watch U.S.A., Inc. v. LSM Watch, Inc.*,
   No. CV 21-1612-PSG, 2022 WL 3575771 (C.D. Cal. June 7, 2022)............... 21

*Tech. LED Intellectual Prop., LLC v. Recogi, LLC*,
   No. 18-cv-3827, 2019 WL 2716610 (N.D. Cal. June 27, 2019)..................... 16

*Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*,
   416 F. Supp. 3d 948 (N.D. Cal. 2019)................................................. 10, 14

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012)................................................... 17

*YYGM S.A. v. Palco Clothing, Inc.*,
   No. CV 15-9181 PA, 2016 WL 7655755 (C.D. Cal. June 20, 2016)
   (Anderson, J.) ................................................................................ 21



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT AGAINST DEFENDANT JESSE BANERJEE
Case No.:  2:23-cv-03672 PA (PDx)

iv

**Statutes**

15 U.S.C. § 1065 .................................................................................. 3, 4, 5

15 U.S.C. § 1114 ......................................................................................... 2

15 U.S.C. § 1114(1) ................................................................................... 2

15 U.S.C. § 1115(b) ................................................................................. 11

15 U.S.C. § 1117 ...................................................................................... 16

15 U.S.C. § 1117(a) ................................................................................. 21

15 U.S.C. § 1117(c) ................................................................................. 20

15 U.S.C. § 1121 ....................................................................................... 8

15 U.S.C. § 1125(a) ................................................................................... 2

15 U.S.C. § 1125(c) ............................................................................. 2, 13

15 U.S.C. § 1127 ...................................................................................... 12

28 U.S.C. §§ 1331, 1338(a) & 1338(b) .................................................... 8

28 U.S.C. § 1441(b) ................................................................................. 15

28 U.S.C. § 2201 ...................................................................................... 14

Cal. Bus. & Prof. Code §§ 14247, 14330 ............................................... 18

Cal. Bus. & Prof. Code § 14330 ......................................................... 2, 13

Cal. Bus. & Prof. Code § 17200 .............................................................. 2

California Business & Professions Code § 17200 *et seq*. ...................... 20

Lanham Act ............................................................................. 16, 18, 20, 21



**Other Authorities**

Fed. R. Civ. P. 55(b)(2) and C. ................................................................... 1

Federal Rule of Civil Procedure 55(a) ......................................................... 2

Federal Rule of Civil Procedure 55(b) ......................................................... 8



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S  MOTION
FOR DEFAULT JUDGMENT AGAINST DEFENDANT JESSE BANERJEE
Case No.:  2:23-cv-03672 PA (PDx)

vi

Pursuant to Fed. R. Civ. P. 55(b)(2) and C.D. Cal. L.R. 55-1, Plaintiff Chippendales USA, LLC submits this Memorandum of Points and Authorities in support of its Motion for Default Judgment against Defendant Jesse Banerjee.

## I.    INTRODUCTION

Due to Defendant's default, entered on June 20, 2023 (Dkt. 22), the allegations in Plaintiff's Complaint (Dkt. 1) are deemed admitted.  There is thus no dispute that Plaintiff owns and operates the world-famous CHIPPENDALES entertainment brand that produces Broadway-style, burlesque dance shows worldwide or that Defendant Jesse Banerjee has been offering for sale counterfeit clothing and hats—along with other types of infringing goods and services—under the CHIPPENDALES trademarks.  Plaintiff seeks an injunction to stop Defendant from continuing this unlawful conduct and a declaratory judgment recognizing Plaintiff's ownership of and exclusive rights to the CHIPPENDALES trademarks. This is critical because Defendant has made unauthorized and deceptive filings with the U.S. Patent and Trademark Office in an effort to assume control over Plaintiff's federal trademark registrations, and he also filed a legal action against Plaintiff seeking to transfer ownership of the trademarks to himself.

The Clerk of Court entered Defendant's default in this action after he failed to respond to the Complaint despite being served with process.  Plaintiff now brings this Motion requesting that the Court enter a default judgment against Defendant that includes: (a) a declaratory judgment recognizing Plaintiff's sole and exclusive rights in and ownership of the CHIPPENDALES trademarks; (b) a permanent injunction against Defendant's infringement and counterfeiting; and (c) an award of statutory damages and Plaintiff's attorneys' fees and costs, consistent with the relief requested in its Complaint.

///

///



## II. STATEMENT OF FACTS

### A. Procedural Background

On May 12, 2023, Plaintiff filed its Complaint against Defendant asserting claims for: (1) declaratory relief as to Plaintiff's ownership of the CHIPPENDALES trademarks; (2) federal trademark infringement, 15 U.S.C. § 1114(1); (3) trademark counterfeiting, 15 U.S.C. § 1114; (4) federal unfair competition 15 U.S.C. § 1125(a); (5) federal trademark dilution, 15 U.S.C. § 1125(c); (6) California trademark dilution, Cal. Bus. & Prof. Code § 14330; and (7) unfair business practices under Cal. Bus. & Prof. Code § 17200.  Complaint (Dkt. 1).  Defendant was served with the Summons and Complaint in this action by USPS first class mail and by leaving copies at Defendant's dwelling with someone of suitable age and discretion on May 21, 2023.  *See* Declaration of Evan S. Nadel in Support of Plaintiff's Motion for Entry of Default Judgment Against Defendant Jesse Banerjee, filed concurrently with Plaintiff's Motion ("Nadel Decl.") ¶ 5.  Defendant was required to respond to the Complaint by June 12, 2023.  *Id*. ¶ 6.

Defendant failed to file a responsive pleading.  *Id*. ¶ 7.  Therefore, pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court granted Plaintiff's request for default and entered a default against Defendant on June 20, 2023.  Dkt. 22.

### B. Plaintiff and its World-Famous CHIPPENDALES Brand

Plaintiff owns and operates the world-famous CHIPPENDALES entertainment brand that produces Broadway-style, burlesque shows worldwide.  Compl. ¶ 2.  The CHIPPENDALES performance troupe was established in Los Angeles in 1979 as the world's first all-male dance act and immediately became a cultural phenomenon, which quickly led to the opening of clubs in other U.S. cities, as well as touring troupes performing in the U.S. and overseas.  *Id*. ¶¶ 13-14.  The revue's immense popularity also spawned the creation of a vast array of licensed merchandise such as clothing and annual calendars.  *Id*. ¶ 14.  Today the

CHIPPENDALES performance troupe entertains audiences from its flagship location at the CHIPPENDALES Theater in Las Vegas, as well as in U.S. and international venues visited by its touring productions.  *Id.* ¶ 15.

### C.   Plaintiff's Rights In and Registrations for its Famous CHIPPENDALES Trademarks

Plaintiff is the sole owner of the CHIPPENDALES business and brand, which it acquired in 2000.  Compl. ¶ 17.  Through a March 30, 2000 Asset Purchase Agreement, Plaintiff acquired from CLP Tour, Ltd. ("CLP"), the prior owner of the brand, the CHIPPENDALES business, along with the famous CHIPPENDALES trademarks and the underlying goodwill represented by the marks.  *Id.* ¶ 39. Plaintiff obtained all of the common law rights in the CHIPPENDALES trademarks, as well as the following federal registrations and applications: Reg. Nos. 1,197,438; 1,211,893; and 1,330,855; Ser. Nos. 75/087,380 75/087,377; 75/087,376; and 75/087,375.  *Id.*  The trademark assignment transferring ownership of these registrations and applications from CLP to Plaintiff was recorded with the U.S. Patent and Trademark Office on July 7, 2000.  *Id.* ¶ 41.

Through Plaintiff's and its predecessors in interest's extensive use of the CHIPPENDALES marks over the last 45 years, Plaintiff has developed extensive common law rights in the marks for a wide range of products and services.  *Id.* ¶ 20. In addition, Plaintiff owns numerous valid federal registrations on the Principal Register of the U.S. Patent and Trademark Office for the CHIPPENDALES mark and its CHIPPENDALES & Bow Tie Design mark for many types of goods and services, as shown below:

| Trademark | Reg.  No./ Reg. Date | Goods/Services | Date of First Use |
|---|---|---|---|
| **CHIPPENDALES**<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 1197438<br><br>6/8/82 | 41: Entertainment services, namely, male dance exhibitions. | 12/1/78 |

| | | | |
|---|---|---|---|
| **CHIPPENDALES**<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 1330855<br><br>4/16/85 | 16: Calenders, playing cards, posters. | 7/3/81 |
| **CHIPPENDALES**<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 2802430<br><br>1/6/04 | 9: Series of DVDs featuring music and male nightclub entertainers. | 1987 |
| **CHIPPENDALES**<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3127649<br><br>8/8/06 | 16: Party supplies, namely, paper napkins; pin-ups, namely, flat, cartboard poster-like cutouts of men with adjustable hands, arms, and legs.<br><br>25: Clothing, namely headwear, hats, tank tops, t-shirts, long sleeve t-shirts, sweatshirts, shorts, nightshirts and undergarments.<br><br>41: Entertainment services, namely, live theatrical and musical floor shows provided at night clubs and theaters.<br><br>45: Providing online greeting cards via the internet. | 16: 7/31/10<br><br>26: 2/7/00<br><br>41: 7/3/81<br><br>45: 2/19/06 |
| **CHIPPENDALES**<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3690717<br><br>9/29/09 | 43: Waiter services for serving drink; bar services. | 2/1/05 |
| **CHIPPENDALES**<br><br>*Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3981590<br><br>6/21/11 | 10: Electric massage applicants, namely, electric vibrating massager. | 10/1/10 |
| **CHIPPENDALES &**<br>**Bow Tie Design**<br><br> CHIPPENDALES | 5203733<br><br>5/16/17 | 10: Electric massage appliances, namely, electric vibrating massager.<br><br>16: Calendars and paper goods, namely, pin-ups, namely, flat, cardboard, poster-like cutouts of men with adjustable hands, arms and legs.<br><br>21:  Barware, namely, shotglasses.<br><br>25: Clothing, namely, headwear, hats, tank tops; t-shirts, long sleeve t-shirts, sweatshirts, shorts, nightshirts and undergarments. | 10: 10/15<br><br>16: 10/15<br><br>25: 10/15<br><br>41: 9/15 |

| | | 41: Entertainment services, namely, live theatrical and musical floor shows provided at night clubs and theaters. | |
|---|---|---|---|

Compl. ¶ 20 & Exhibit 1.

Plaintiff's federal registrations for its CHIPPENDALES word marks (namely, U.S. Reg. Nos. 1197438; 1330855; 2802430; 3127649; 3690717; and 3981590) are incontestable under 15 U.S.C. § 1065.  Compl. ¶ 23.

Since acquiring the CHIPPENDALES business in 2000, Plaintiff has continuously and exclusively used the foregoing marks (collectively, the "CHIPPENDALES Marks") in the United States.  Compl. ¶¶ 42-43.  Therefore, independently of the rights Plaintiff acquired in 2000, Plaintiff owns the CHIPPENDALES Marks through continuous, exclusive use of them for over twenty years.  *Id.* ¶ 43.  The CHIPPENDALES Marks are distinctive, arbitrary, and fanciful, and are entitled to the broadest scope of protection.  *Id.* ¶ 24.  In addition, through the vast promotion and investment in the CHIPPENDALES brand, combined with extensive publicity and sales under the CHIPPENDALES Marks, Plaintiff has acquired enormous goodwill in the marks, and the CHIPPENDALES Marks have become famous among the general public in the United States.  *Id.* ¶ 26.

### D.   Defendant's Counterfeit and Infringing Goods

Defendant has no rights in the CHIPPENDALES Marks.  Compl. ¶ 44. Nevertheless, with actual and constructive knowledge of Plaintiff's rights, Defendant has used counterfeits of Plaintiff's federally registered CHIPPENDALES Marks, and marks that are substantially similar to those marks, to advertise and offer for sale his own goods and services.  *Id.* ¶¶ 48, 85-88.

For example, at Defendant's website located at *chippendalestruecrime.com*, Defendant has offered for sale clothing and hats displaying spurious marks that are identical with, or substantially indistinguishable from, Plaintiff's federally-



registered CHIPPENDALES Marks.  Compl. ¶¶ ¶¶ 20, 88, 106-110.  Defendant has also offered mobile phone cases and mugs bearing confusingly similar imitations of the CHIPPENDALES Marks through his website located at *chippendalestruecrime.com*.  *Id.* ¶ 88.  Defendant's counterfeit clothing and hats, and other infringing goods, are not manufactured, licensed, authorized, sponsored, endorsed, or approved by Plaintiff.

### E.    Defendant's Infringing Services

Defendant offers services in nightclub promotion, production of live shows for women, nightclub photography, and creative marketing under various CHIPPENDALES-formative marks that misrepresent his association with Plaintiff's CHIPPENDALES brand such that they are likely to cause confusion among consumers and are likely to cause the public to falsely associate Defendant with Plaintiff and its authentic CHIPPENDALES services.  Compl. ¶ 89.  For example, without authorization, Defendant advertises himself and his services using the infringing marks "**CHIPPENDALES HEIR**" and "**CHIPPENDALES AUTHORITY**." *Id.* ¶¶ 90-92.  Defendant also blatantly misrepresents himself as the "**CHIPPENDALES Chief Legal Strategist**," and the "**Strategic Administrator of the world name trademark, CHIPPENDALES**." *Id.* ¶ 92.  Further, in April 2023, Defendant filed articles of organization with the California Secretary of State to establish a limited liability company named "Chippendales LLC." *Id.* ¶ 93.

### F.    Defendant's Misrepresentations to the U.S. Patent and Trademark Office

Defendant has repeatedly attempted to assume control of Plaintiff's trademark registrations for its CHIPPENDALES Marks through the U.S. Patent and Trademark Office ("USPTO").  Compl. ¶¶ 49-51; 65-73.  Beginning in 2016, and continuing in 2022 and 2023, Defendant made several unauthorized filings with the USPTO, as



well as with the USPTO's Assignment Recordation Branch, attempting to change the ownership information of the CHIPPENDALES Marks from Plaintiff to an LLC established and controlled by Defendant, listing Defendant's personal mailing and email addresses for the owner contact information. *Id.* Defendant's unauthorized filings caused the USPTO to delete Plaintiff as the owner for many of its registrations and change the owner to Defendant's purported LLC. *Id.* ¶ 72. This cast a cloud over Plaintiff's title to its famous CHIPPENDALES Marks and imposed on Plaintiff a significant burden to correct the ownership records with the USPTO. *Id.* ¶ 73. Then, in December 2022, when trying to claim ownership of Plaintiff's U.S. Reg. No. 1197438 for the mark CHIPPENDALES in Class 41 (for "male dance exhibitions"), Defendant filed a specimen showing his use of that mark for "Chippendales male review, by the creator's first son. A new generation of entertainment. Fashion shows, country events, fair shows, and brand Ambassadors." *Id.* ¶ 68.

**G.    Defendant's Probate Action Concerning the CHIPPENDALES Brand**

In 2017, Defendant filed a petition for probate in Los Angeles Superior Court, seeking authorization to open probate over the estate of Somen Banerjee, the founder of the CHIPPENDALES business, who died in 1994. Compl. ¶¶ 27, 52. In that proceeding, Defendant alleged that he is Somen's son and that certain persons have illegally withheld inheritance he is owed from Somen's estate. *Id.* ¶¶ 53-61. Plaintiff was not a party to that proceeding. On April 3, 2023, however, Defendant filed in the probate action a petition against Chippendales USA, LLC, titled "*Petition For: An Order Confirming USPTODecision [sic] On Chippendales Trademark and All Series Partaining [sic] to Chippendales As Forming Part of the Estate of Somen Banerjee; Requesting § 859 Double Damages Against Chippendales USA, LLC* ("Defendant's § 850 Petition"). Defendant's § 850 Petition



PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT
Case No.:  2:23-cv-03672 PA (PDx)                                                          - 7 -

alleged that the CHIPPENDALES trademark was an asset of decedent Somen Banerjee that, after his death, was fraudulently sold by his wife Irene to CLP. *Id.* ¶ 76. Therefore, the Petition alleged, the sale of the CHIPPENDALES business and trademarks from CLP to Plaintiff was also fraudulent. *Id.* ¶ 77. In his § 850 Petition, Defendant seeks the issuance of an order: a) "upholding the decision of the USPTO holding that the sale of the CHIPPENDALES trademark was fraudulent;" b) finding that the CHIPPENDALES trademark currently owned by Plaintiff is part of Mr. Somen Banerjee's estate; c) transferring the CHIPPENDALES trademark owned by Plaintiff to Mr. Banerjee's estate, as administered by Defendant; and d) restraining Plaintiff from using the CHIPPENDALES trademark. *Id.* ¶ 81. Chippendales USA, LLC removed the § 850 Petition to this Court, where it is pending as Case No. 2:23-cv-03676-PA.

## III.   ARGUMENT

Upon a defendant's default, all well-pleaded allegations set forth in the complaint are deemed admitted. *See DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986) (upholding a default judgment because well-pleaded factual allegations must be taken as true given a party's failure to answer).

### A.   The *Eitel* Factors Favor Entry of Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b), a court may enter default judgment following entry of default. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).[1] A defaulting defendant is deemed to have admitted all well-pleaded factual allegations in the complaint related to liability.

---

[1] This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) & 1338(b), and 15 U.S.C. § 1121. Defendant is subject to personal jurisdiction because he resides in and conducts business within this District, and he has committed acts of trademark infringement, counterfeiting, and unfair competition within the state of California and this District.



1    *DIRECTV, Inc.*, 503 F.3d at 851.

2           Rule 55(b)(2) grants the Court discretion to enter a judgment by default

3    against any party that fails to plead or otherwise defend as required by the rules.

4    *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal.

5    2003). The Ninth Circuit has identified seven factors courts should consider in

6    deciding whether to enter default judgment:

7           (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

8           substantive claim, (3) the sufficiency of the complaint, (4) the sum of

9           money at stake in the action; (5) the possibility of a dispute concerning

10          material facts; (6) whether the default was due to excusable neglect, and

11          (7) the strong policy underlying the Federal Rules of Civil Procedure

12          favoring decisions on the merits.

13   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this

14   discretionary standard, default judgments are more often granted than denied."

15   *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).  As

16   discussed below, the *Eitel* factors strongly favor entry of default judgment in favor

17   of Plaintiff.

18          **1.     Plaintiff Will Be Prejudiced Absent a Default Judgment**

19          The prejudice factor favors entry of default judgment where, as here, the

20   absence of a default judgment would leave the plaintiff without another recourse for

21   recovery.  *See Levi Strauss & Co. v. Toyo Enter. Co*., 665 F. Supp. 2d 1084, 1095

22   (N.D. Cal. 2009) (first *Eitel* factor favored default judgment where plaintiff

23   otherwise would be "unable to prevent continued infringement").  Despite being

24   served with the Summons and Complaint by two different means of service (*see*

25   Dkt. 17), as well as being served with Plaintiff's request to the Clerk of Court to

26   enter default against Defendant (*see* Dkt. 21) and the actual entry of default (*see*

27   Dkt. 22), Defendant has failed to respond or otherwise appear in this action.

28

1  Nevertheless, Defendant continues to make unauthorized uses of Plaintiff's marks.

2  Nadel Decl. ¶¶ 17-19. Accordingly, Plaintiff has no other recourse to stop

3  Defendant's continued infringement, and the first *Eitel* factor weighs strongly in

4  favor of a default judgment. *See Vietnam Reform Party v. Viet Tan - Vietnam*

5  *Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (finding plaintiff would be

6  prejudiced absent a default judgment because it would have no other recourse to

7  prevent infringement).

8              **2.      Plaintiff's Complaint is Sufficiently Pled and Its Claims Are**

9                     **Meritorious**

10     "Under the second and third *Eitel* factors the Court must examine whether the

11  Plaintiff has pled facts sufficient to establish and succeed upon its claims."

12  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1055 (N.D. Cal. 2010).

13  Plaintiff has pled facts—deemed admitted by virtue of Defendant's default—

14  sufficient to establish and succeed upon each of its seven causes of action. *See*

15  *DIRECTV, Inc.*, 503 F.3d at 851 ("[I]n defaulting, defendants are deemed to have

16  admitted all well-pleaded factual allegations contained in the complaints.").

17              **a.      Plaintiff's Federal Claims for Trademark Infringement**

18                     **and Unfair Competition, and its California Claim for**

19                     **Unfair Competition**

20     "[C]laims for trademark infringement [and] unfair competition under federal

21  law, and unfair competition under California law are all 'subject to the same legal

22  standards.'" *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 2:20-CV-04310-ODW-

23  KSx, 2022 WL 3908831, at *3 (C.D. Cal. Aug. 30, 2022) (citation omitted). To

24  succeed on these claims, a plaintiff must prove that: "(1) it has a protectable

25  ownership interest in the mark; and (2) the defendant's use of the mark is likely to

26  cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts,*

27  *Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

28



PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT
Case No.:  2:23-cv-03672 PA (PDx)                                    - 10 -

1
2

### i.      Plaintiff's Protectable Ownership Interest in the CHIPPENDALES Marks

3      Plaintiff has adequately alleged a valid ownership interest in the

4 CHIPPENDALES Marks.  Plaintiff owns federal registrations for the

5 CHIPPENDALES Marks (Compl. ¶¶ 20-26, 98-99), which constitute "prima facie

6 evidence of the validity" of those marks and Plaintiff's ownership of them. *Kinsley*

7 *Tech. Co.*, 2022 WL 3908831, at *4 (quoting 15 U.S.C. § 1115(a)).  Further,

8 Plaintiff's incontestable registrations[2] for the majority of the CHIPPENDALES

9 Marks constitute "conclusive evidence" of the validity of those marks and of

10 Plaintiff's ownership of them.  *See KP Permanent Make-Up, Inc. v. Lasting*

11 *Impression I, Inc.*, 543 U.S. 111, 117 (2004); 15 U.S.C. § 1115(b).

12
13
14

### ii.      Defendant's Unauthorized Use of the CHIPPENDALES Marks Is Likely to Cause Confusion

15      Plaintiff has adequately alleged that Defendant's use of the CHIPPENDALES

16 Marks and confusingly similar imitations of them is likely to cause consumer

17 confusion. For example, Defendant has used Plaintiff's exact marks on Defendant's

18 website to sell goods that copy "the color scheme, layout, and design features of

19 Plaintiff's authentic CHIPPENDALES merchandise." Compl. ¶ 87-88. Defendant

20 also uses confusingly similar imitations of the CHIPPENDALES Marks to offer

21 "services in nightclub promotion, production of live shows for women, nightclub

22 photography, and creative marketing"—all services nearly identical to Plaintiff's

23 legitimate CHIPPENDALES services. *Id.* ¶¶ 89-91. Such conduct "has caused" and

24 "will continue to cause, a likelihood of confusion and deception of members of the

25 trade and public." *Id.* ¶ 100.

26
27

---

[2] U.S. Reg. Nos. 1197438; 1330855; 2802430; 3127649; 3690717; and 3981590.

28

Accordingly, Plaintiff has pled facts sufficient to establish and succeed upon its federal claims for trademark infringement and unfair competition, and its California claim for unfair competition.

### b. Plaintiff's Federal Counterfeiting Claim

A federal counterfeiting claim is subject to the same standards as a federal trademark infringement claim, except that the defendant's mark must "be (1) a non-genuine mark identical[3] to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946 (9th Cir. 2011).

Here, Plaintiff owns a registration for CHIPPENDALES in connection with "hats" and "t-shirts" (U.S. Reg. No. 3127649), and Defendant has used a substantially indistinguishable version of that mark in connection with the sale of hats and t-shirts. Compl. ¶¶ 87-88, 106; Nadel Decl. Ex. 2. Plaintiff also owns a registration for the CHIPPENDALES & Bow Tie Design mark in connection with "hats" and "t-shirts" (U.S. Reg. No. 5203733), and Defendant has used a substantially indistinguishable version of that mark in connection with the sale of hats and t-shirts. Compl. ¶¶ 87-88, 106; Nadel Decl. Ex. 3.

Accordingly, Plaintiff has pled facts sufficient to establish and succeed upon its federal counterfeiting claim.[4] *See, e.g.*, *Phillip Morris USA Inc. v. Shalabi*, 352

---

[3] The defendant's mark may alternatively be "substantially indistinguishable from" the plaintiff's registered mark. 15 U.S.C. § 1127.

[4] Moreover, in support of its request for statutory damages, Plaintiff has filed with its Motion detailed website evidence showing Defendant's multiple unauthorized uses of Plaintiff's CHIPPENDALES marks, which confirm the uncontested allegations in Plaintiff's Complaint. *See Nestle USA, Inc. v. Gunther Grant, Inc.*, No. CV-13-6754 MMM (ASX), 2014 WL 12558008, at *13 (C.D. Cal. May 13, 2014) (granting default judgment; in addition to the allegations in complaint being taken as true due to entry of default, plaintiff's provision of website screenshots and

1   F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (in cases involving counterfeit marks, "it is
2   unnecessary to perform the step-by-step examination . . . because counterfeit marks
3   are inherently confusing.") (citation omitted).

4           **c.**    **Plaintiff's Federal and State Law Dilution Claims**

5         Plaintiff has also established that Defendant's actions constitute trademark
6   dilution under both federal and California law.  The requirements for each are the
7   same.  *See Jada Toys, Inc. v. Mattel, Inc*., 518 F.3d 628, 634 (9th Cir. 2008).  To
8   prevail on a dilution claim, a plaintiff must show that: (1) its mark is famous; (2) the
9   defendant began using its mark after the Plaintiff's mark became famous; and (3)
10  the defendant's use is likely to cause dilution by blurring or dilution by tarnishment.
11  *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1172 (9th
12  Cir. 2011); 15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14330.

13        The CHIPPENDALES Marks are famous because (1) they have been in use
14  since 1979; (2) they have long been "a cultural phenomenon"; (3) they are the
15  subject of numerous federal registrations; (4) Plaintiff and its predecessors "have
16  invested enormous amounts of time, money, and effort advertising and promoting"
17  CHIPPENDALES-branded products and services "throughout the United States";
18  (5) they are the subject of "extensive publicity and sales"; and (6) they "are
19  recognized . . . throughout the United States by consumers."  Compl. ¶¶ 12, 14-20,
20  25-26, 118, 124.

21        The CHIPPENDALES Marks became famous "well before Defendant began"
22  using "confusingly similar CHIPPENDALES marks."  Compl. ¶ 118.  And
23  Defendant's actions "are likely to dilute the distinctiveness of Plaintiff's famous
24  CHIPPENDALES [Marks] by eroding the public's exclusive identification of those
25  famous marks with Plaintiff, tarnishing and degrading the positive associations of

26  ————————————————————————————————————————————

27  images of defendant's infringement negated possibility that material facts were
28  disputed).



those famous marks, and otherwise lessening the capacity of the CHIPPENDALES [Marks] to identify and distinguish Plaintiff's goods and services." *Id*. ¶ 119.

Therefore, Plaintiff has pled facts sufficient to establish and succeed upon its federal and state-law dilution claims.

### d.     Plaintiff's Declaratory Judgment Claim

Finally, Plaintiff has established that a "case of actual controversy" exists between the parties to warrant the issuance of a declaratory judgment, and that Plaintiff is entitled to a judicial determination and declaration of its rights with respect to the ownership of the CHIPPENDALES Marks. 28 U.S.C. § 2201. The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy." *Id.*  "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Vietnam Reform Party*, 416 F. Supp. 3d at 969.

Defendant's actions online, before the USPTO, and in the courthouse have created an actual, substantial, and immediate controversy between the parties regarding Plaintiff's ownership of the CHIPPENDALES Marks such that the issuance of a declaratory judgment "will clarify Plaintiff's rights regarding the Marks and resolve the controversy." *See id.*

The uncontested facts establish that Defendant has repeatedly claimed that Plaintiff's 2000 purchase of the CHIPPENDALES business, the CHIPPENDALES Marks, and all goodwill associated with the marks, was "fraudulent," and thus the CHIPPENDALES Marks belong to the estate of the late Steve Banerjee, and ultimately to Defendant as an alleged "heir" of the estate.  Compl. ¶¶ 46-47, 49-50, 62, 66-67, 74-78, 81, 95.  Defendant has repeatedly made such contentions in

1   unauthorized filings for Plaintiff's trademarks that he has submitted to the USPTO,

2   attempting to change the owner from Plaintiff to Defendant.  *Id.* ¶¶ 46, 49-51, 65-73,

3   95.  Moreover, Defendant has made those claims in a petition he filed against

4   Plaintiff in a probate proceeding before Los Angeles Superior Court regarding the

5   estate of Mr. Somen Banerjee.[5]  In that petition, Jesse Banerjee requested a judicial

6   order: (a) "upholding the decision of the USPTO holding that the sale of the

7   CHIPPENDALES trademark was fraudulent"; (b) finding that the

8   CHIPPENDALES trademark currently owned by Plaintiff is part of Mr. Somen

9   Banerjee's estate; (c) transferring the CHIPPENDALES trademark owned by

10  Plaintiff to Mr. Somen Banerjee's estate, as administered by Defendant; and (d)

11  restraining Plaintiff from using the CHIPPENDALES trademark.  *Id.* ¶¶ 74-81.

12      Because Defendant's actions have created a "case of actual controversy,"

13  Plaintiff is entitled to a declaratory judgment recognizing its exclusive ownership of

14  the CHIPPENDALES Marks (as reflected in Plaintiff's Proposed Judgment and

15  Permanent Injunction, filed with this Motion).  Therefore, Plaintiff has sufficiently

16  pled and can prevail on its claim for declaratory judgment.

17      Based on the foregoing, the second and third *Eitel* factors weigh in favor of

18  entry of default judgment in Plaintiff's favor on all of its claims.

19          **3.      The Damages Sought By Plaintiff Favor Default Judgment**

20      The fourth *Eitel* factor involves consideration of the amount of money at

21  stake.  *Eitel*, 782 F.2d at 1471–72.  As discussed in more detail below (*see infra* pp.

22  20-21), due to Defendant's failure to appear in this action, it is impossible to

23  determine Defendant's profits or Plaintiff's actual damages, and thus Plaintiff seeks

24  ───────────────

25  [5] On May 12, 2023, Chippendales removed Mr. Banerjee's Petition to this Court
    based on diversity of citizenship and because the Petition is adversarial in nature,

26  qualifying as a civil action properly removable within the meaning of 28 U.S.C. §

27  1441(b).  That related case is *Jesse Banerjee v. Chippendales USA, LLC*, Case No.
    2:23-cv-03676-PA (PDx).

28



an award of statutory damages for Defendant's counterfeiting.  Plaintiff, however, is not seeking anywhere near the maximum amount of statutory damages to which it is entitled under the Lanham Act.

The Lanham Act authorizes statutory damages of up to $2,000,000 *per* counterfeit mark *per* type of goods or services sold, 15 U.S.C. § 1117, meaning Plaintiff could potentially recover millions of dollars in statutory damages.  But Plaintiff is only seeking $25,000 per mark, for a total of $50,000.  *See infra* pp. 20-21.  Because this amount falls far below the statutory maximum set by Congress, this *Eitel* factor favors the entry of default judgment.  *See Nestle USA, Inc. v. Gunther Grant, Inc*., No. CV-13-6754 MMM (ASX), 2014 WL 12558008, at *12 (C.D. Cal. May 13, 2014) (fourth *Eitel* factor "d[id] not weigh against the entry of default judgment" even where plaintiff sought $2,100,000 in statutory damages—the maximum allowed); *see also Tech. LED Intellectual Prop., LLC v. Recogi, LLC*, No. 18-cv-3827, 2019 WL 2716610, at *4 (N.D. Cal. June 27, 2019) ("[D]efault judgment is appropriate where [the amount] is 'tailored to [the defendant's] specific misconduct.'").

### 4.   No Dispute Exists As To Material Facts

The factual allegations in the Complaint, which must be accepted as true, also include "screenshots and images that depict defendants' use of [Plaintiff's] marks," and Plaintiff has provided proof of "service on defendants of the summons and complaint in this action." *See Nestle USA, Inc.*, 2014 WL 12558008, at *12. "[T]hus, there is no dispute that defendants infringed," and "[t]his factor, therefore, also favors the entry of default judgment against defendant[]." *See id.*

### 5.   The Default Entered Against Defendant Did Not Result from Excusable Neglect

The sixth *Eitel* factor, whether the default "may have been the product of excusable neglect," favors default judgment "when the defendant has been properly

served or the plaintiff demonstrates that the defendant is aware of the lawsuit."
*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).
Service was properly effected on Defendant.  Dkt. 17; Nadel Decl. ¶ 5.  Mr.
Banerjee is also the plaintiff in a related action in this Court, in which a number of
filings have explicitly referred to this case.  *See Banerjee v. Chippendales USA LLC*,
Case No. 2:23-cv-03676-PA, Dkt. Nos. 1, 10, 25, 27-1, 29. Under such
circumstances, even though Defendant may be *pro se*, no basis exists to conclude
that Defendant's default was the result of excusable neglect.  *See PepsiCo, Inc.*, 238
F. Supp. 2d at 1177 ("Given [*pro se*] Defendant's early participation in the matter,
the possibility of excusable neglect is remote."); *see also Deckers Outdoor Corp. v.
Granger*, No. 2:10-CV-06476-JHN-MANx, 2011 WL 13217386, at *2 (C.D. Cal.
Feb. 24, 2011) ("Defendant submitted a letter to the Court on September 29, 2010 to
which the Court responded, referring her to the Pro Se Clinic for assistance. Thus,
Defendant's failure to respond to this lawsuit was not due to excusable neglect.").

### 6.    Defendant's Failure to Answer Makes a Decision on the Merits Impossible

The final *Eitel* factor balances the entry of default judgment against the
preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1472.  Because
Defendant's failure to answer makes a decision on the merits impractical, if not
impossible, *see Philip Morris USA Inc.*, 219 F.R.D. at 501, entry of default is
warranted here.  *See PepsiCo., Inc.*, 238 F. Supp. 2d at 1177.

### 7.    Summary of the *Eitel* Factors

Each of the *Eitel* factors favors grating Plaintiff's motion for default judgment
against Defendant.  Accordingly, a default judgment is proper.



### B.   Plaintiff's Requested Remedies are Warranted, Authorized, and Substantiated

#### 1.   Plaintiff is Entitled to Injunctive Relief

Plaintiff seeks to permanently enjoin Defendant from counterfeiting and infringing its CHIPPENDALES Marks.  *See* Proposed Judgment and Permanent Injunction, filed concurrently.  The requested injunction, which is consistent with what Plaintiff prayed for in its Complaint (*see* Complaint ¶¶ 7-10) is both authorized by the relevant statutes and warranted under the facts of this case.

The Lanham Act expressly authorizes injunctive relief where a defendant engages in trademark infringement, counterfeiting, trademark dilution, or unfair competition.  *See* § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).  Plaintiff is also entitled to an injunction based on Defendant's conduct constituting trademark dilution and unfair trade practices under California law.  *See* Cal. Bus. & Prof. Code §§ 14247, 14330.

As discussed above, Plaintiff has shown that it is entitled to judgment on each of its claims.  There is no dispute that Plaintiff will continue to suffer irreparable harm if a permanent injunction does not issue.  The undisputed facts establish that Plaintiff has suffered, and will continue to suffer, irreparable harm by virtue of Defendant's intentional acts of infringement, counterfeiting, unfair competition, and dilution unless Defendant is enjoined.  *See* Compl. ¶¶ 103, 111, 116, 121, 126, 130.

#### 2.   Plaintiff is Entitled to a Declaratory Judgment

As discussed above (*see supra* pp. 14-15), Plaintiff has established that a sufficient "case of actual controversy" exists between the parties to warrant the issuance of a declaratory judgment, and that Plaintiff is entitled to a judicial



determination and declaration of the rights of the parties with respect to the ownership of the CHIPPENDALES Marks.  A declaratory judgment is particularly appropriate here, as Defendant has repeatedly tried to seize control of Plaintiff's CHIPPENDALES trademark registrations at the USPTO, and has even filed a civil action against Plaintiff requesting that Plaintiff be enjoined from using its CHIPPENDALES Marks, and that ownership of the marks is transferred to Defendant.

Therefore, Plaintiff respectfully requests that the Court issue a declaratory judgment containing a determination of the parties' rights with respect to the CHIPPENDALES Marks, in substantially the same form as contained in Plaintiff's Proposed Judgment and Permanent Injunction, filed concurrently.  Specifically, Plaintiff is entitled to a judgment declaring that:

1) The March 30, 2000, sale of the CHIPPENDALES business, CHIPPENDALES Marks, and the associated goodwill from CLP Tour, Ltd. to plaintiff Chippendales USA, LLC, was valid and binding;

2) Chippendales USA, LLC is the rightful and exclusive owner of common law and registered rights in the CHIPPENDALES Marks, as it acquired from CLP Tour, Ltd. on March 30, 2000;

3) Plaintiff is the rightful and exclusive owner of common law and registered rights in the CHIPPENDALES Marks, as acquired by its more than 20 years of exclusive and continuous use of the marks;

4) Jesse Banerjee has no rights or legitimate interest in the CHIPPENDALES Marks or any marks or domain names confusingly similar thereto;

5) Easebe Enterprises, Inc., incorporated in California by Somen Banerjee on August 29, 1975, has no rights or legitimate interest in the CHIPPENDALES Marks or any marks or domain names confusingly similar thereto;



6) Easebe Enterprises, Inc., incorporated in California by Defendant on January 1, 2017; has no rights or legitimate interest in the CHIPPENDALES Marks or any marks or domain names confusingly similar thereto;

7) The estate of Somen Banerjee has no rights or legitimate interest in the CHIPPENDALES Marks or any marks or domain names confusingly similar thereto; and

8) Jesse Banerjee's unauthorized use of the CHIPPENDALES Marks constitutes federal trademark infringement, federal trademark counterfeiting, federal unfair competition, federal trademark dilution, California trademark dilution, and unfair business practices under California Business & Professions Code § 17200 *et seq.*

### 3.    Plaintiff is Entitled to Statutory Damages

The Lanham Act provides statutory damages for the use of counterfeit marks in the amount of $1,000 to $200,000 per counterfeit mark, per type of goods or services—an amount which may be increased in cases of willful counterfeiting to $2,000,000 per mark, per type of goods or services.  *See* 15 U.S.C. § 1117(c)). Here, "Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill of Plaintiff's CHIPPENDALES [Marks]." Compl. ¶¶ 101, 115, 120. At default judgment, "all factual allegations in the complaint are deemed true, including" allegations of "willful infringement." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

As discussed in Section III.A.2.b. *supra*, Defendant willfully used at least two counterfeit marks in connection with hats and t-shirts, and Plaintiff is therefore entitled to up to $8,000,000 in statutory damages. But here, Plaintiff requests an award of $25,000 per mark, for a total of **$50,000** in statutory damages.  This amount bears a plausible relationship to Plaintiff's actual damages—including the



1    diminution in the value of the CHIPPENDALES Marks and harm to Plaintiff's

2    reputation—and is sufficient to deter future infringement. *See Rolex Watch U.S.A.,*

3    *Inc. v. LSM Watch, Inc.*, No. CV 21-1612-PSG (SKx), 2022 WL 3575771, at *7

4    (C.D. Cal. June 7, 2022) ("$1 million per counterfeited mark is necessary to deter

5    Defendants and others from counterfeiting Plaintiff's registered trademarks, even if

6    Defendants' actual ill-gotten gains were likely less than half of that sum").

7    Plaintiff's requested amount of statutory damages is extremely reasonable in light of

8    Defendant's refusal to participate in this case and the statutory damages available

9    for willful counterfeiting.

10   ### 4.    Plaintiff Is Entitled to Attorneys' Fees And Costs

11           Finally, Plaintiff is entitled to an award of its attorneys' fees and costs it

12   expended in pursuit of this action.  The Lanham Act authorizes recovery of "costs"

13   in all cases, and recovery of attorneys' fees in "exceptional cases."  15 U.S.C. §

14   1117(a).  The Ninth Circuit has twice held that an allegation of willful infringement

15   "deemed true" through default "sufficiently establishes [a plaintiff's] entitlement to

16   attorneys' fees under the Lanham Act." *Derek Andrew, Inc.*, 528 F.3d at 702; *Rio*

17   *Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002).  As discussed

18   above, Defendant's conduct was willful, deliberate, and malicious, making this an

19   exceptional case under the Lanham Act. *See YYGM S.A. v. Palco Clothing, Inc.*, No.

20   CV 15-9181 PA (JRPx), 2016 WL 7655755, at *3 (C.D. Cal. June 20, 2016)

21   (Anderson, J.) ("[G]iven the Complaint's well-pleaded allegations of willful

22   infringement, this is an exceptional case under the Lanham Act.").

23           Accordingly, Defendant should be required to pay the attorneys' fees and

24   costs expended by Plaintiff in pursing this action to redress Defendant's willful

25   infringement.  Pursuant to L.R. 55-3, and because Plaintiff seeks $50,000 in

26   statutory damages, Plaintiff seeks "$1200 plus 6% of [$40,000]," or **$3,600** in

27   attorney's fees. Plaintiff is prepared to submit detailed documents showing that

28



PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT
Case No.:  2:23-cv-03672 PA (PDx)                                          - 21 -

1  Plaintiff has incurred and paid significantly more than $3,600 in fees.

2  **IV.      CONCLUSION**

3          For the foregoing reasons, Plaintiff respectfully requests that the Court grant

4  Plaintiff's Motion for Entry of Default Judgment, permanently enjoin Defendant,

5  issue a declaratory judgment, and award Plaintiff statutory damages, attorneys' fees,

6  and costs, as detailed in the Proposed Judgment and Permanent Injunction submitted

7  with this Motion.

8
9  Dated:  July 19, 2023                    Respectfully submitted,

10                                          KILPATRICK TOWNSEND & STOCKTON LLP

11
12                                          By:   */s/ Evan S. Nadel*
                                                  EVAN S. NADEL

13
                                                  *Attorneys for Plaintiff*
14                                                *Chippendales USA, LLC*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**Local Rule 11-6.2 Certificate of Compliance**

2

The undersigned, counsel of record for Plaintiff Chippendales USA, LLC,

3

certifies that this brief contains 6,143 words, which complies with the word limit of

4

L.R. 11-6.1.

5

6

Dated:  July 19, 2023           Respectfully submitted,

7

KILPATRICK TOWNSEND & STOCKTON LLP

8

9

By:   */s/ Evan S. Nadel*
              EVAN S. NADEL

10

11

*Attorneys for Plaintiff*
*Chippendales USA, LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

